IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Selective Way Insurance Company, | ) | Civil Action No.: 2:21-cv-03963-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' DEWBERRY, MT.** |
| | ) | **PLEASANT SQUARE AND GREP** |
| Dewberry Capital Corporation, now known as Dewberry Group Inc.; Mt. Pleasant Square Associations, II, LLC d/b/a Oyster Park Apartments; GREP Southeast, LLC; Karolina Richardson; and Krista Richardson, | ) ) ) ) ) ) | **MEMORANDUM IN OPPOSITION TO SELECTIVE'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |

The Defendants Dewberry Capital Corporation, now known as Dewberry Group, Inc., Mt. Pleasant Square Associates, II, LLC, d/b/a Oyster Park Apartments, and GREP Southeast, LLC ("Dewberry Defendants") submit this Memorandum in opposition to Selective's Motion for Summary Judgement and in support of a Cross-Motion for Summary Judgement in favor of the Dewberry Defendants.

**THE FACTS**

There is no meaningful dispute as to the facts relevant to this case.

In the underlying tort suit brought in Charleston County, South Carolina by Defendants Karolina and Krista Richardson, they allege five causes of action against the Dewberry Defendants. Their first cause of action alleges negligence of the Dewberry Defendants which subjected them to "excessive, unreasonable and dangerous levels of mold concentration" in the [Dewberry] apartment. They assert this negligence proximately caused them both personal injuries and property damage. The apartment in question is in the Oyster Park Apartments complex located in Mt. Pleasant, SC. Defendants Dewberry Capital Corporation developed Oyster Park and then

WBD (US) 56000166v1

sold it to Defendant Mt. Pleasant Square Associates, II LLC, the current owner. At all times relevant to the Richardsons' tort claims, Defendant GREP Southeast, LLC managed the apartment.

Selective has been defending Dewberry in the underlying tort claim and has now brought the instant suit against Dewberry to determine the scope of Selective's coverage under Selective's insuring policy. The only issue before the court is the applicability of Selective's policy exclusion titled "GEORGIA LIMITED FUNGI OR BACTERIA COVERAGE – SMALL BUSINESSES" in South Carolina.

## **THE POLICY**

A] THE COVERAGE

Selective has produced "INSURED'S COPY" of Selective Policy S225508000, Exhibit 1 to this Memorandum. It is the policy the coverage of which is at issue. [Exhibit 1 is Bates stamped D-001 to D-130].

Selective has also produced "INSURED'S COPY" of the declarations pages of the policy, Exhibit 2 of this Memorandum. [It is Bates stamped D-001 to D-019].

The declaration pages are otherwise scattered through the policy, Exhibit 1.

On page D-002 of Exhibit 2, DEWBERRY 10TH STREET, LLC and DEWBERRY CAPITAL CORPORATION are the Named Insureds, and the following page, D-003, is a list of the other Named Insureds, including Defendant Mt. Pleasant Square Associates II, LLC.

Paged D-007 and D-008 of Exhibit 2 is the "Schedule of Locations." Nine of the insured buildings are in Mt. Pleasant, SC, one is in Charleston and another in North Charleston. Two are in Virginia and the balance of insured buildings are all in Atlanta, GA.

The "Commercial Policy Forms and Endorsement Schedule" is on pages D-010 and D-013 of Exhibit 2.

The 16 page basic insuring policy form, titled "Commercial General Liability Coverage Form," is found in pages D-057 to D-072 of Exhibit 1.  Section 1- COVERAGES 1.a. Insuring Agreement [on Page D-057] states "We will pay those sums that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which this insurance applies."

Page D-058 sets forth the "Exclusions" in the basic policy form.  There is no mention of an exclusion for bodily injury caused by fungi or bacteria.

"Bodily injury" is defined on page D-069 to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

"Occurrence" is defined on page D-071 to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The word "accident" is undefined.

Page D-034 of Exhibit 1 shows the General Aggregate [Liability] Limit to be $2,000,000; Each Occurrence [Liability] Limit to be $1,000,000; and the annual "Total Advance Premium" paid by Dewberry to be $70,927.00.

Dewberry submits there is no question Dewberry would be entitled to this liability coverage but for the question of the applicability of the "Georgia Limited Fungi or Bacteria Coverage – Small Business" exclusion to Dewberry's property in South Carolina.

B] STATE-SPECIFIC AND GENERAL ENDORSEMENTS AND NOTICES

The policy contains a number of notices and/or endorsements that are state specific, including the following.

1. "IMPORTANT NOTICE TO POLICY HOLDERS GEORGIA FUNGI OR BACTERIA CLARIFICATIONS OF COVERAGE" [page D-008 of EX 1].  The text of this notice references "CG 32 01-Georgia Limited Fungi as Bacteria Coverage-Small Business (CGL)."

2. "GEORGIA UNINSURED MOTORISTS COVERAGE NOTICE ACKNOWLEDGEMENT" [page D-011 of Exhibit 1]. Every state has its own uninsured motorist statutes, making this Notice without question state-specific to Georgia

3. "GEORGIA CHANGES-CANCELLATION AND NONRENEWAL" [page D-028 and D-029 of Exhibit 1] Notice that the word "Georgia" does not appear anywhere in this endorsement other than in the title. Regardless, it again is without question state-specific, as every state has its own statutes governing insurance cancellation and nonrenewal.

4. Same as 3, *supra*, except a later, 2014, version [page D-030 and D-031 of Exhibit 1].

5. "GEORGIA LIMITED FUNGI OR BACTERIA COVERAGE – SMALL BUSINESSES." [page D-046 of Exhibit 1]. This is the exclusion in issue. [The policy does not contain a definition of "Small Business," creating an ambiguity depending on Dewberry's size.]

6. "SOUTH CAROLINA CHANGES" [page D-126 of Exhibit 1].

Fungi and bacteria are "pollutants" as defined in the policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." [Page D-071 of Exhibit 1]

In contrast to the state specific "Georgia Limited Fungi or Bacteria Coverage" exclusion, the policy contains exclusions for other pollutants clearly not state-specific.

1. "EXCLUSION – LEAD HAZARD" [page D-032 of Exhibit 1.]

2. "ASBESTOS EXCLUSION" [page D-033 of Exhibit 1]

3. NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT" [page D-026 of Exhibit 1]

### **THE LAW**

A] SUMMARY JUDGEMENT STANDARD

This court now has before it cross-motions for summary judgement in this declaratory judgement action. These cross-motions are therefore governed by FRCP 56 [Summary Judgement], FRCP 57 [Declaratory Judgement], and 28 U.S.C. § 2201 [Creation of Remedy].

FRCP 56 states in part: "The court shall grant summary judgement if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law."

"When facing cross-motions for summary judgement, this court reviews "each motion separately on its own merits to determine whether either of the parties deserves judgement as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516 (4th Cir., 2003) … "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational interferences in the light most favorable to the party opposing the motion." Id." *Hanover Ins. Co. v. Blue Ridge Property Management, LLC*, 490 F. Supp. 3d 904 (M.D.N.C. 09/28/2020).

Considering these cross-motions, it does not appear that from either movant's view that there is "a genuine dispute as to any material fact." In Dewberry's opinion, the court must decide which movant "is entitled to judgement as a matter of law."

B] INTERPRETATION OF INSURANCE POLICIES

"Because insurance policies are contracts of adhesion… ambiguities must be construed most strongly against the insurers" *Ferguson v. Coregis Ins. Co*., 527 F.3d 930, 933 (Ct. App. 9th Cir. 2008); Cauch § 22:18 "Insurer's preparation of policy."

The Selective policy in this case was obviously drafted by Selective. Most provisions are pre-printed Insurance Service Office, Inc. [ISO] documents, including the Georgia exclusion for fungi and bacteria and for lead, asbestos, and nuclear pollution. The Selective policy is a contract of adhesion.

It is well settled in South Carolina that provisions of an insurance policy are to be liberally construed in favor of the insured and strictly construed against the insurer. *Kraft v. Hartford Ins. Cos.*, 279 S.C. 257, 305 S.E 2d 243(1983). Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation most favorable to the insured will be adopted. *Quinn v. State Farm Mut. Auto. Ins. Co*., 238 S.C. 301, 304, 120 S.E.2d 15, 16 (1961).

"Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." *Auto-Owners Ins. Co. v. Benjamin*, 415 S.C. 137, 781 S.E.2d 137 (Ct. App. 2016).

C] STATE-SPECIFIC ENDORESEMENTS

In its response to Inquiry 4 of its Rule 26.03 Disclosures, Selective suggested its claim would be supported by cases it cited which deal with the issue of state-specific endorsements.

However, in its memorandum in support of its motion for summary judgment, it inexplicably completely ignored this issue. Selective addresses the general legitimacy of policy exclusions on page 6 and cites four cases dealing with exclusions, none of which addresses the issue of state-specific endorsements.

Dewberry asserts that the fungi on bacteria coverage exclusion at issue is in fact state-specific to Georgia and does not apply to Dewberry's properties in South Carolina.

A plain reading of the policy as a whole demonstrates the difference between its endorsements of general application, e.g. the lead, asbestos, and nuclear endorsements, and those with state-specific application, a number of which are set forth above. The essential geographic identifier/reference of "Georgia" cannot be ignored. That reference is an essential and substantive term of the fungi/bacteria endorsement. The court should not adopt an interpretation that would render the "Georgia" designation of the endorsement at issue to be meaningless surplusage. See,

2 Couch on Ins. § 18:20 (3d ed.) ("The policy must be considered as a whole and the caption read in connection with the remainder of the contents").

*American International Speciality Lines Ins. Co. v. Continental Cas. Ins. Co*., 142 Cal. App. 4th 1342, 49 Cal. Rptr. 3d 1 (2006) is instructive. Here, the plaintiff commercial liability insurers who settled a trademark infringement claim against their insured sued nonsettling insurers, including Continental, for contribution. The Continental policy required the insured to notify Continental of any claim for injury if the insured estimated that the defense costs and liability exceeded a set amount. The issue became whether notice of the action to Continental's authorized insurance broker, AON, meant that Continental received timely notice of the suit or settlement. The Continental policy contained an endorsement entitled "Utah Changes" that amended Continental's policy notice requirement to include the sentence: "Notice to our authorized representation is notice to us."

The settling insurers argued that the application of the Utah Changes endorsement modified the entire Continental policy without restriction such that it applied in California where the underlying action was filed. The case the settling insurers relied on was *John Akridge Co. v. Travelers Companies*, 837 F.Supp. 6 (D.D.C. 1993). Incidentally, the *Alkridge* case is the lead case cited by Selective in its Rule 26.03 Disclosures in support of the proposition that state-specific endorsements are not automatically construed to be limited to properties in the state listed in their title.

The California Court of Appeals disagreed with the settling insurers. After summarizing *Akridge*, it wrote: "We, of course, are free to consider *Akridge,* but we would do so only if we found its reasoning compelling. Its reasoning is not compelling because it is cursory and does not employ our state's interpretive rules. ... To interpret the endorsement in the manner espoused by

the settling insurers would read out the references to specific places in other endorsements. However, we are supposed to give effect to every part of a contract, if reasonably practicable. It is practicable to give the references to specific places effect by interpreting each endorsement as applying only to claims or suits made or filed in a specified place. Also, we note that words are to be interpreted in their ordinary and popular sense. The Indiana Changes, Utah Changes, Puerto Rico Changes, and Texas Changes connote changes that are specific to those places. Because the language targets specific places, we must respect that language. Aside from that, we can use language from other parts of the Continental policy to interpret particular clauses." 142 Cal.App. 4th 1342 at 1361-62. (citations omitted) See, also, *Boscov's Department Store, Inc. v. American Guar. and Liab. Ins. Co*., 546 F.Supp.3d 354 (E.D. Pa. 2021).

## CONCLUSION

Selective's motion for summary judgment should be denied and Dewberry's cross-motion granted.

South Carolina law governing the interpretation/construction of insurance policies fully supports Dewberry's position. Selective's policy was a contract of adhesion. Its provisions must be liberally construed in favor of Dewberry and strictly construed against Selective. Where its words are capable of two reasonable interpretations, the interpretation more favorable to Dewberry must be adopted. The exclusion in question must be construed most strongly against Selective, which bears the burden of establishing the exclusion's applicability to an apartment in Mt. Pleasant, SC. To the extent that Selective's use of "Georgia" in the title to the exclusion has created an ambiguity, reasonably subject to differing interpretations, that ambiguity must be construed most strongly against Selective.

Finally, Selective's policy as a whole shows the difference between its endorsements of general application and those exclusions, including the exclusion at issue here, with state-specific application. To interpret the endorsement in question in the manner espoused by Selective would read out the references to specific places in other provisions of the policy.

There is an old saying in baseball that "a tie goes to the runner." In this case, even if the court found the scales of justice evenly balanced between Selective and Dewberry, given the law cited herein, the judgment should be awarded to Dewberry.

Respectfully submitted;

WOMBLE BOND DICKINSON (US) LLP

Charleston, SC

March 31, 2022

*s/Henry E. Grimball, Jr.*_____
Henry E. Grimball, Jr., Esq.
P.O. Box 999 (29402)
5 Exchange St.
Charleston, SC  29401
843-722-3400
Henry.Grimball@wbd-us.com
*Attorney for Defendants Dewberry Capital Corporation, now known as Dewberry Group, Inc., Mt. Pleasant Square Associates, II, LLC d/b/a Oyster Park Apartments, and GREP Southeast, LLC*

WBD (US) 56000166v1